592 So.2d 1076 (1992)
Todd Michael MENDYK, Appellant,
v.
STATE of Florida, Appellee.
Todd Michael MENDYK, Petitioner,
v.
Richard L. DUGGER, Etc., Respondent.
Nos. 77865 and 76906.
Supreme Court of Florida.
January 2, 1992.
Rehearing Denied February 20, 1992.
*1078 Larry Helm Spalding, Capital Collateral Representative; Martin J. McClain, Chief Asst. CCR and Susan Hugins Elsass, Staff Atty., Office of the Capital Collateral, Tallahassee, for appellant/petitioner.
Robert A. Butterworth, Atty. Gen., and Kellie A. Nielan and Barbara C. Davis, Asst. Attys. Gen., Daytona Beach, for appellee/respondent.
BARKETT, Justice.
Todd Michael Mendyk appeals the trial court's denial of his motion for relief pursuant to Florida Rule of Criminal Procedure 3.850, and petitions this Court for a writ of habeas corpus.[1] We affirm the trial court's ruling on the motion and deny the petition for habeas corpus. However, we grant Mendyk's petition for information pursuant to chapter 119, Florida Statutes (1989).
Mendyk's convictions and sentences arise from events that transpired late in the evening of April 8, 1987, when Mendyk and a friend, Philip Frantz, drove to a convenience store. After entering the store, Mendyk grabbed the store clerk and forced her into his truck. They drove to a secluded area where Mendyk tied her to a sawhorse and sexually tortured her. Mendyk untied her and moved her to a new location where he retied her between two trees. Frantz and Mendyk attempted to leave the scene in the truck, but became stuck when Mendyk steered too far to one side of the dirt road. After attempts to free the truck failed, Mendyk returned to the victim, strangled her, and dragged her body into the bushes. Mendyk and Frantz were arrested when police discovered the victim missing and began an aerial search, observed the truck in the woods, apprehended the defendants, and subsequently discovered the victim's body.
Mendyk was convicted of first-degree murder, kidnapping, and sexual battery. The jury recommended death by a unanimous vote, and the judge imposed death for the first-degree murder conviction and three consecutive life sentences on the remaining counts. Mendyk's convictions and sentences were affirmed on direct appeal, Mendyk v. State, 545 So.2d 846 (Fla. 1989), and the United States Supreme Court denied certiorari, Mendyk v. Florida, 493 U.S. 984, 110 S.Ct. 520, 107 L.Ed.2d 521 (1989). Governor Martinez signed a death warrant scheduling Mendyk's execution for January 15, 1991, and this Court granted a motion for stay of execution and set a schedule for the filing of post-conviction pleadings.

Rule 3.850 Motion
Mendyk's claims can be grouped into three basic categories:
1. The trial court erred in denying an evidentiary hearing to resolve allegations that:
a. The prosecution used false evidence and arguments at trial and withheld material and exculpatory evidence in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963);
b. Defense trial counsel was ineffective in investigating and presenting mitigating evidence and in failing to object or adequately pursue various legal issues.
2. Mendyk's conviction and death sentence are unreliable because:
a. This Court on direct appeal erroneously decided Mendyk's claim that statements should have been suppressed;
b. The admission of numerous inflamatory photographs violated Mendyk's Fifth, Eighth, and Fourteenth Amendment rights;
c. Procedural and substantive errors rendered Mendyk's trial fundamentally unfair.
3. The Hernando County Sheriff's Office, the Florida Parole Commission, and the Pasco County Sheriff's Office have withheld files and records in violation of chapter 119, Florida Statutes.
*1079 Mendyk's Brady claim alleges the existence of the following exculpatory evidence:
1. Codefendant Frantz's statements that Mendyk was intoxicated at the time of the murder;
2. Evidence that the State knew Frantz's trial testimony was a lie;
3. Evidence that the State proffered false testimony of John Cousins to the sentencing judge;
4. Evidence that the State knew Mendyk's competency was in decline during the trial.
In order to prevail on a Brady claim, a defendant must establish the following:
(1) that the Government possessed evidence favorable to the defendant (including impeachment evidence); (2) that the defendant does not possess the evidence nor could he obtain it himself with any reasonable diligence; (3) that the prosecution suppressed the favorable evidence; and (4) that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different.
Hegwood v. State, 575 So.2d 170, 172 (1991) (quoting United States v. Meros, 866 F.2d 1304, 1308 (11th Cir.), cert. denied, 493 U.S. 932, 110 S.Ct. 322, 107 L.Ed.2d 312 (1989)). We do not find the alleged evidence of intoxication meets this test. The evidence that Mendyk now proffers does not contradict Frantz's deposition or trial testimony that he and Mendyk had consumed drugs and alcohol on the night of the murder. Moreover, Frantz never stated that Mendyk was intoxicated at the time of the murder, neither at trial nor in the proffered statement. We thus find the evidence carries little impeachment value and that it is not otherwise exculpatory in nature.
Mendyk's assertion that the State knew Frantz lied at trial derives from the reported statements of two police officials who "believed" that Frantz's involvement in the murder was greater than he admitted. We need not even comment on the admissibility of such evidence as it is not exculpatory as far as Mendyk is concerned. Even if Frantz was more involved in the crime than he testified to, it would not diminish the culpability of Mendyk in the absence of specific allegations that Mendyk's participation in the crime was actually less than the evidence at trial demonstrated.
We find no error in the proffer of the testimony of John Cousins. Although the testimony was proffered, the State chose not to use this witness at trial. We also find no merit in the claim that the State hid evidence of Mendyk's incompetency.
We likewise reject Mendyk's claim of ineffective assistance of counsel. A claim of ineffective assistance of counsel will warrant an evidentiary hearing only where the defendant alleges "specific facts which are not conclusively rebutted by the record and which demonstrate a deficiency in performance that prejudiced the defendant." Roberts v. State, 568 So.2d 1255, 1259 (Fla. 1990). Prejudice is demonstrated if the deficiency was sufficient to render the result unreliable. Gorham v. State, 521 So.2d 1067, 1069 (Fla. 1988) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)).
Mendyk asserts his trial counsel's failure to investigate and present in mitigation his mental deficiencies, intoxication at the time of the offense, history of substance abuse, deprived childhood, and lack of significant prior criminal activity render the resulting death sentence unreliable. However, even accepting the proffered mitigating evidence as true, we must find the evidence would not have changed the outcome in this case. The trial court found three strong aggravating circumstances[2] supporting the death sentence and the mitigating circumstance of Mendyk's age of *1080 twenty-one. Mendyk alleges additional mitigating evidence places in question the reliability of the death penalty in this case. However, the evidence Mendyk now proffers simply does not constitute the quantum capable of persuading us that it would have made a difference in this case. Mendyk suggests that the following mitigating evidence should have been presented at trial: that his mother was beaten by an alcoholic father; that he spent most of his childhood in his bedroom, reading; that he was a loner and pushed himself to do his homework "perfectly"; and that he had a history of alcohol and drug use and was mentally impaired. We have reviewed the proffered evidence and cannot say that the requirement of prejudice has been met. Although an abusive childhood, a history of alcohol and drug abuse, and mental impairment can clearly constitute mitigating factors, in this case we do not find serious deprivations distinguishing this case from the norm of children from broken homes. Thus, Mendyk has not proven he was prejudiced by any failure of defense counsel to present this evidence. E.g., Tompkins v. Dugger, 549 So.2d 1370 (1989), cert. denied, 493 U.S. 1093, 110 S.Ct. 1170, 107 L.Ed.2d 1073 (1990); Gorham.
Nor do we find that any of the alleged omissions at trial meet the standards for ineffective assistance of counsel. Strickland; Gorham. Mendyk claims that trial counsel should have provided the mental health expert who examined Mendyk with background information and specifically asked him to evaluate for mitigating factors. The expert's report reveals he had substantial background on Mendyk, and, as we already noted, the mitigating evidence now proffered by Mendyk would not have changed the outcome. See Roberts, 568 So.2d at 1260. We find no merit to Mendyk's assertion that his trial counsel abandoned him, that counsel failed to adequately impeach or cross-examine Frantz, or that counsel failed to adequately argue against the State's use of color slides taken prior to the victim's autopsy. Nor do we find counsel was ineffective for failing to present a mental health or voluntary intoxication defense as the evidence, even as now proffered by Mendyk, fails to demonstrate any likelihood such a defense would have been supportable. We likewise reject Mendyk's claim regarding counsel's failure to object to the standard jury instructions (1) that did not require the jury to agree as to premeditated versus felony murder; (2) on the statutory aggravating circumstance heinous, atrocious, or cruel; (3) on the aggravating circumstance cold, calculated, and premeditated; (4) that at sentencing shifted the burden of proof to Mendyk to prove life was the appropriate sentence; (5) that did not require life if the only aggravating circumstance found was "in the course of a felony"; and (6) that stated a recommendation of life must be made by a majority of the jury. When jury instructions are proper, the failure to object does not constitute a serious and substantial deficiency that is measurably below the standard of competent counsel. E.g., Gorham, 521 So.2d at 1070.
We find legally insufficient Mendyk's factual allegations regarding (1) the failure of defense counsel to challenge the State's lay witnesses rendering opinions on Mendyk's capacity; (2) the failure of defense counsel to challenge the voluntariness of Mendyk's April 9, 1987 statement; (3) the failure of defense counsel to challenge a juror with strong views in favor of the death penalty; (4) the failure of defense counsel to challenge Mendyk's being shackled during trial; (5) the failure of defense counsel to object to the State's use of leading questions during direct and redirect examination; (6) and the failure of defense counsel to challenge the use of nonstatutory aggravating factors. To the extent counsel failed to object to hearsay on how Mendyk "felt" during the murder and "reacted" to the death, to the State's closing argument, and to alleged violations of Booth v. Maryland, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987), we find such omissions to be harmless beyond a reasonable doubt on this record, and thus no prejudice is established. Lastly, we reject that counsel was ineffective for failing to object to alleged violations of Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, *1081 86 L.Ed.2d 231 (1985). This Court has previously rejected Mendyk's position on this issue, Robinson v. State, 574 So.2d 108 (Fla.), cert. denied, ___ U.S. ___, 112 S.Ct. 131, 116 L.Ed.2d 99 (1991), and thus counsel's failure to object was not deficient performance.
The claims involved in the second issue have been reviewed and are rejected as they are procedurally barred and/or do not demonstrate fundamental error. Mendyk's claim that his motion to suppress a confession was erroneously decided by this Court is without merit. This Court already determined that the admission of the confession, if error, was harmless. Mendyk v. State, 545 So.2d at 848. We also reject Mendyk's claim that the admission of photographs violated his rights. The trial court in its discretion admitted these photographs over defense objections. We find no abuse of discretion in the trial court's ruling on this issue. Nixon v. State, 572 So.2d 1336, 1342 (Fla. 1990), cert. denied, ___ U.S. ___, 112 S.Ct. 164, 116 L.Ed.2d 128 (1991). Furthermore, this claim should have been raised on direct appeal, and accordingly, it is procedurally barred in post-conviction proceedings. Engle v. Dugger, 576 So.2d 696, 703 (Fla. 1991). Finally, we reject without discussion Mendyk's claim that his trial was rendered fundamentally unfair by procedural and substantive errors. "Fundamental error must rise to the level of a denial of due process where `the interests of justice present a compelling demand for its application.'" Downs v. State, 572 So.2d 895, 900 (Fla. 1990) (quoting Ray v. State, 403 So.2d 956, 960 (Fla. 1981)), cert. denied, ___ U.S. ___, 112 S.Ct. 101, 116 L.Ed.2d 72 (1991). Mendyk has made no allegations that rise to the level of fundamental error.
We do, however, find merit in Mendyk's claim under chapter 119, Florida Statutes (1989), regarding the disclosure of files and records pertaining to his case in the possession of the Hernando County Sheriff's Office, the Florida Parole Commission, and the Pasco County Sheriff's Office. This Court in State v. Kokal, 562 So.2d 324 (Fla. 1990), held that the state attorney must disclose public records pertaining to a defendant's case upon the conviction and sentence becoming final. In addition, where a defendant's prior request for disclosure has been denied, such a request may properly be made as part of a motion for post-conviction relief. See Provenzano v. Dugger, 561 So.2d 541 (Fla. 1990). The State argues that Provenzano should be limited solely to the state attorney's file and that defendants seeking disclosure from other state agencies must pursue their requests through civil action. We decline to so limit Provenzano and thus find Mendyk's request in the instant case appropriate. To the extent the agencies at issue here have doubt as to the content of their particular files being subject to disclosure, the trial court shall hold an in camera inspection for a determination. See Kokal, 562 So.2d at 327.

Habeas Corpus
In his amended petition for habeas corpus, Mendyk alleges the following errors:
1. This Court on direct appeal erroneously decided Mendyk's claim that statements should have been suppressed.
2. The jury was not instructed that it must reach a unanimous vote as to whether the petitioner was guilty of premeditated or felony murder in violation of the United States Constitution.
3. Appellate counsel was ineffective for failing to argue on direct appeal:
a. the prejudicial effect of photographs, slides, and videotapes introduced by the State during trial, and
b. that Mendyk was sentenced to death on the basis of "victim impact" and other impermissible factors.
We have already rejected the first issue, which was also raised in Mendyk's 3.850 motion. As to the second issue, the United States Supreme Court has recently decided this issue adversely to Mendyk's position. See Schad v. Arizona, ___ U.S. ___, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991). We address briefly Mendyk's claims of ineffective assistance of appellate counsel. We reject Mendyk's claim that appellate counsel was ineffective in failing to pursue on appeal the prejudicial effects *1082 of photographs, slides, and videotapes. As we noted above, Mendyk has not demonstrated the trial judge abused his discretion in admitting these objects into evidence. Because the trial judge did not err in the admission of this evidence, appellate counsel was not ineffective for failing to pursue the matter on appeal. See Lambrix v. Dugger, 529 So.2d 1110 (Fla. 1988). We likewise reject Mendyk's claim that his appellate counsel was ineffective for failing to argue on direct appeal the improper use of victim impact evidence and other impermissible factors pursuant to Booth v. Maryland, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987). We have examined the statements at issue and note that the only objection at trial was to a statement that the victim was attending school. Appellate counsel's failure to argue against the use of that particular statement was harmless, at worst. As to the other statements, this Court has held that lack of an objection at trial forecloses a Booth claim on direct appeal absent fundamental error. Grossman v. State, 525 So.2d 833 (Fla. 1988), cert. denied, 489 U.S. 1071, 109 S.Ct. 1354, 103 L.Ed.2d 822 (1989). As discussed above, no fundamental error has been demonstrated here. Thus, appellate counsel was not ineffective on this issue.

Conclusion
We affirm the order denying the motion for post-conviction relief. Having found merit to Mendyk's claim under chapter 119, Florida Statutes (1989), we extend the two-year time limitation of Florida Rule of Criminal Procedure 3.850 for sixty days from the date of disclosure solely for the purpose of providing Mendyk the opportunity to file a new motion for post-conviction relief predicated upon any claims arising from the disclosure. The petition for habeas corpus is denied.
It is so ordered.
SHAW, C.J., and OVERTON, McDONALD, GRIMES, KOGAN and HARDING, JJ., concur.
NOTES
[1] We have jurisdiction pursuant to article V, sections 3(b)(1) and (9) of the Florida Constitution.
[2] The aggravating circumstances were that the murder was committed during a kidnapping and sexual battery; that the murder was especially wicked, evil, atrocious, and cruel; and that the murder was cold, calculated, and premeditated. These findings were affirmed on direct appeal. Mendyk v. State, 545 So.2d 846, 850 (Fla.), cert. denied 493 U.S. 984, 110 S.Ct. 520, 107 L.Ed.2d 521 (1989).